# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONE BEACON INSURANCE CO., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOANN DAMBACHER, | : | No. 09-5106 |
| Defendant. | : | |

## MEMORANDUM

Schiller, J.                                                                                                           September 27, 2010

      Plaintiff OneBeacon Insurance Company ("OneBeacon") brings this action against its insured, Defendant Joann Dambacher, for a declaratory judgment that it has no obligation to pay certain claims submitted under an automobile insurance policy. OneBeacon asserts that it has no obligation to pay these claims pursuant to a release agreement ("the Release") Dambacher executed in 1986 following an earlier lawsuit against OneBeacon's predecessor-in-interest, Commercial Union. On September 9, 2010, the Court conducted a bench trial. At trial, the parties agreed that the Court would determine whether Dambacher is entitled to future home renovations, van modifications, and nursing services in excess of $4,000 per month under the Release. The Court now enters the following Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure 52(a). For the reasons that follow, the Court finds that Plaintiff OneBeacon must provide for Dambacher's reasonable expenses for nursing services, van modifications, and home renovations, including for nursing services in excess of $4,000 per month under the Release.

I.   **FINDINGS OF FACT**

   A.   **Ms. Dambacher**

On November 3, 1977, fourteen-year-old Joann Dambacher was involved in a single vehicle automobile accident that left her a quadriplegic. (*Id.*) Since the accident, she has required extensive nursing, hospital, and rehabilitative care. (Tr. at 31, 32, 51, 53.) Her needs have increased in recent years to the point that she currently requires twenty-four-hour nursing care to attend to her medical needs, personal hygiene, and household tasks. (Tr. at 54-55.) She is currently unable to work due to complications from her disability. (*Id.* at 52.) In 1979, Dambacher sued Commercial Union for benefits she claimed under an automobile insurance policy held by her father. (Joint Pretrial Stipulation, Agreed Facts ¶ 3 [Agreed Facts].) The parties settled the case in 1986. (Pl's Trial Ex. 6, Opinion of the Court in *Dambacher v. Commercial Union*, dated February, 1985 [1985 Opinion].) Although there have been delays in processing claims, Commercial Union/OneBeacon has paid all of Dambacher's nursing care and medical bills since the 1986 settlement, including for nursing care in excess of $4,000 per month. (Tr. at 49-51; 91.)

At the time of the accident, Dambacher was living in Philadelphia with her parents. (*Id.* at 31.) Her parents were her sole caretakers in the period after the accident until she settled her lawsuit against Commercial Union. (*Id.* at 32.) She remained in that home until her father died in 1986. (*Id.*) That home was not disabled-accessible, and as a result, she was confined to the first floor, had to be carried up the stairs to bathe, and was unable to use the kitchen. (*Id.* at 31-32.)

In approximately 1988, Dambacher purchased a home with her mother in Medford, New Jersey, where they both lived. (*Id.* at 32-33.) Dambacher engaged two contractors, M & D Home Improvement and Barrington Door, to provide modifications to the home to accommodate her

disability, including an automatic door opener and a modified bathroom. (*Id.* at 34-35.) Dambacher submitted two bills for the renovations in the amounts of $5,980.52 and $2,422.00 in September 1988, both of which Commercial Union paid. (*Id.* at 34-36.) Dambacher testified that the Medford house, despite the modifications, is not fully accessible because no modifications have been made to the kitchen and because she has no access to the raised area in the loft of the house. (*Id.* at 37-38.)

Several years after purchasing the Medford home, Dambacher purchased another home with her mother in Stone Harbor, New Jersey, where Dambacher currently lives by herself. As with the Medford home, she arranged for modifications, including an automatic door and a modified bathroom. (*Id*. at 38.) OneBeacon paid for these renovations. (*Id.*) Dambacher testified that she is not able to live independently in the Stone Harbor house because it is not fully accessible. (Tr. at 41.) She also testified that the location of the Stone Harbor house on the New Jersey shore isolates her from friends and family during the colder months of the year. (*Id.* at 41.) For these reasons, Dambacher would like to construct a new, fully accessible home in Shamong, New Jersey, near Medford. (*Id.* at 41-42.) In April 2009, Dambacher submitted a claim to OneBeacon for modifications to a newly constructed house in Shamong in the amount of $491,584. (*Id.*; Agreed Facts ¶ 7.) OneBeacon denied the claim because her claims for home renovations were extinguished under the terms of the 1986 Release signed by the parties. (Agreed Facts ¶ 8.)

Dambacher also requires a specially modified van so that she can transport herself. In the years following the signing of the Release, Commercial Union and/or OneBeacon paid for van modifications on multiple occasions.[1] In 1993, Dambacher purchased a Chrysler van and had

---

[1] Dambacher's disabled-accessible vans must be replaced every five to six years or every 60,000 to 70,000 miles for safety reasons. (Tr. at 43-44.)

modifications made by Del-Val Enterprises. (*Id.* at 42.) Commercial Union paid this bill in the amount of $30,968. (*Id.* at 43.) Approximately five years later, Dambacher purchased another Chrysler van. (*Id.* at 44.) Commercial Union and/or OneBeacon paid for the modifications. (*Id.*) In approximately 2001, she purchased another van, and had Performance Vans make the necessary modifications. Commercial Union paid the Performance Vans bill in the amount of approximately $30,000-$40,000. (*Id.* at 44-45.) Again, in 2006, Dambacher purchased a van, with modifications made by Accessible Vans in the amount of $36,873.75. (*Id.* at 46-47.) OneBeacon also paid this bill. (*Id.* at 47.)

      B.      **Dambacher's State Court Litigation**

At the time of her accident, Dambacher was covered by an automobile insurance policy issued to Dambacher's father by Commercial Union. (Agreed Facts ¶ 2.) In 1979, Dambacher filed a lawsuit against Commercial Union in the Philadelphia Court of Common Pleas, alleging that certain expenses were covered by the policy, including renovations to her parents' home, transportation expenses, van modifications, and home nursing care. (*Id.* ¶ 3.) In February of 1985, a jury awarded Dambacher $28,471 for home renovations, $13,565 for a van, $963,053.62 for past nursing services and $7,200 per month in future nursing care. (*Id.* ¶ 4; 1985 Opinion.) On post-trial motions filed by both parties, the Court of Common Pleas vacated the jury award on the grounds that certain of Dambacher's claims were barred by the statute of limitations. (1985 Opinion.) While this decision was on appeal, the parties settled the case in April, 1986. (Agreed Facts ¶¶ 2-6.) On April 22, 1986, Dambacher executed the Release, which included a lump sum payment of $480,000 and $4,000 per month in nursing care for the remainder of her life. (*Id.* ¶ 6; Pl's Trial Ex. 2, Release in Full of All Claims dated April 22, 1986 [Release].) The Release was drafted by Commercial

4

Union's attorney, David M. McCormick, and reviewed and approved by Dambacher's attorney, Gustine J. Pelagatti. (Agreed Facts ¶ 6.)

      C.     **The 1986 Settlement Negotiations and Terms of the Release**

In April 1986, Norman Whitton, Senior Claims Analyst for Commercial Union, entered into settlement negotiations with Pelagatti while cross-appeals from both parties were pending in Dambacher's state court lawsuit. On April 10, 1986, Whitton sent a letter to Pelagatti confirming that the two had met on April 3, 1986 and settled Dambacher's case. (Pl's Trial Ex. 1, Letter from Norman B. Whitton to Gustine J. Pelagatti dated April 10, 1986 [Whitton Letter].) McCormick was copied on the letter. (*Id.*) The letter stated:

> The settlement agreement is contingent upon court approval in the amount of $480,000 . . . which shall release all claims to include, but not limited to, claims for prior nursing services, renovations, a van, attorney fees, and costs, interest, transportation expenses, and is inclusive of all prior and future claims, except future nursing services . . . . It is also agreed that we [Commercial Union] would pay $4,000 per month for future nursing services for Joann Dambacher.

(*Id.*) On April 9, 1986, Dambacher filed a Petition for Approval of Settlement with the Court of Common Pleas, which the court granted on April 11, 1986. (Pl's Trial Ex. 3, Petition for Approval of Settlement of No-Fault Benefits [Petition].) Paragraphs 23 and 24 of the Petition are similar, but are not identical to the language in the Release. Paragraph 23 provides that "Plaintiff is aware that by accepting the $480,000.00 cash settlement . . . she is forever waiving her right to make additional claims for past nursing services, home renovations, a van, transportation expense [sic] and work-loss benefits prior to the date of this settlement." (*Id.*) Paragraph 24 provides, "Plaintiff is aware that irrespective of this settlement, Commercial Union Assurance Companies will have a continuing duty to provide her the costs of reasonable and necessary services, products and accommodations as per

5

the Pennsylvania No-Fault Act." (*Id.*) Dambacher submitted an affidavit in support of the Petition, which states, "I understand that I will be receiving $4,000.00 per month for the rest of my life in order to obtain nursing services. I understand that Commercial Union Assurance Companies will continue to give me reasonably needed medical care, supplies and medications . . ." (*Id.*)

The Release consists of two paragraphs. Paragraph One provides:

> I, Joann Dambacher . . . for and in consideration of payment of the sum of Four Hundred Eighty Thousand ($480,000) Dollars and future payments of Four Thousand ($4,000) Dollars a month for the rest of my life, . . . hereby release and discharge COMMERCIAL UNION INSURANCE COMPANIES, its successors, and assigns . . . of any and every claim, demand, right or cause of action whatsoever from any responsibility for payments under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, et seq. of *any basic loss benefits to cover past claims for nursing services, past and future claims for a van, past and future claims for renovations, for attorneys fees and costs, past and present claims for interest, and past and future claims for work loss*, arising from an automobile accident which occurred on November 3, 1977.

(Release.) (emphasis added) Paragraph Two states:

> IN FURTHER CONSIDERATION FOR THE MAKING OF SAID SETTLEMENTS AND PAYMENTS, IT IS EXPRESSLY WARRANTED AND AGREED: (1) Commercial Union Insurance Companies has a continuing duty to provide me with the costs of reasonable and necessary medical services, products, and accommodation as required by the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et. seq.

(*Id.*) Paragraph Two also provides: "[I] understand that the $4,000 per month for all future nursing services will last the rest of my life . . ." (*Id.*)

## II. CONCLUSIONS OF LAW

The parties stipulate that Pennsylvania law governs the substantive legal issues in this case. (Joint Pretrial Stipulation, Summary of the Applicable Law) Under Pennsylvania law, "[t]he enforcability of settlement agreements is determined according to the principles of contract law."

*Century Inn, Inc. v. Century Inn Realty, Inc.*, 516 A.2d 765, 767 (Pa. Super. Ct. 1986). In construing a contract's terms, a court "must strive to ascertain and give effect to the intent of the parties as found in the written contract." *Dep't of Transp. v. Pa. Indus. for the Blind and Handicapped,* 886 A.2d 706, 711 (Pa. Commw. Ct. 1994). When contract terms are clear and unambiguous, the parties' intent will be determined from the contract itself. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). The intent of the parties is a question of fact. *McDonnell v. Ford Motor Co.*, 643 A.2d 1102, 1105 (Pa. Super. Ct. 1994). However, a contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* Whether a contract is ambiguous is a question of law. *Riverwatch Condo. Owners Ass'n v. Restoration Dev. Corp.*, 980 A.2d 674, 684 (Pa. Commw. Ct. 2009). When a contract is ambiguous, the court may consider extrinsic evidence in resolving the ambiguity. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). Ambiguous contracts are interpreted by the finder of fact. *Kripp*, 849 A.2d at 1163. Under well-settled rules of contract interpretation, an ambiguous contract will be construed against the drafter. *Dep't of Gen. Servs. v. Pittsburgh Bldg. Co.*, 920 A.2d 973, 989 (Pa. Commw. Ct. 2007).

### A. The Release is Ambiguous

The Release is ambiguous. Paragraph One provides that Dambacher releases Commercial Union from any obligation it may have under the No-Fault Act to pay "any basic loss benefits to cover past claims for nursing services, past and *future* claims for a van, past and *future* claims for renovations." (Release.) (emphasis added) However, Paragraph Two stands in contrast, providing that Commercial Union has a "*continuing duty* to provide [Dambacher] with the costs of reasonable and necessary medical services, products, and accommodations" as required by the No-Fault Act.

7

(*Id.*) (emphasis added)

Thus what Paragraph Two giveth, Paragraph One taketh away. On one hand, the reference to "past and future" claims for a van and renovations arguably bars Dambacher's claims made after executing the Release for van modifications and home renovations. On the other hand, however, the "continuing duty" enumerated in Paragraph Two arguably permits Dambacher's future claims for these items to the extent that home modifications are "medical services, products, [or] accommodations."

The Release is also ambiguous with regard to Dambacher's claims for nursing services. In Paragraph One, Dambacher releases Commercial Union only from claims for "past nursing services," standing in contrast to the "past and future" language preceding "van modifications" and "renovations." Additionally, the "continuing duty" language in Paragraph Two refers to "reasonable and necessary medical services, products and accommodations," which, read plainly, obligates Commercial Union/One Beacon to pay for all of Dambacher's reasonable and necessary post-Release nursing care. However, the Release contains multiple recitations that Commercial Union remains obligated to pay "$4,000 per month" for nursing care for the rest of Dambacher's life. OneBeacon argues that the Release entitles Dambacher to exactly $4,000 per month for her nursing care. Although this is a reasonable reading of the terms of the Release, it is not the only such reading. Given the "continuing duty" language in Paragraph Two, another reasonable reading is that Commercial Union/OneBeacon must pay for all of the nursing care that Dambacher requires during her lifetime insofar as those services are "reasonable and necessary," with $4,000 per month serving as the minimum owed Dambacher.

8

Examining the relevant Release provisions in light of their references to the No-Fault Act does not resolve the ambiguity. Although the No-Fault Act was repealed in 1984 and replaced with Pennsylvania's Motor Vehicle Financial Responsibility Law, the No-Fault Act was in effect at the time of Dambacher's accident and governed her father's insurance contract. *See Emp. Benefit Plan of Harleysville Mut. Ins. Co. v. Grode*, 535 A.2d 739, 741 (Pa. Commw. Ct. 1988). Thus the No-Fault Act governs the parties' rights and obligations as provided in the Release.

The No-Fault Act was enacted in 1974 "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits to motor vehicle accident victims . . . ." 40 Pa. Cons. Stat. § 1009.102(b). The No-Fault Act provided that victims of automobile accidents occurring in Pennsylvania were entitled to receive "basic loss benefits." 40 Pa. Cons. Stat. §§ 1009.103 ("victim"); 1009.201(a). "Basic loss benefits" include entitlement to "allowable expense[s]." *Id.* § 1009.202(a). An "allowable expense" under the Act includes "reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations" for "professional treatment and care" and "medical and vocational rehabilitation services." *Id.* § 1009.103. "Medical and vocational rehabilitation services" are defined as "services necessary to reduce disability to restore the physical, psychological, social, and vocational functioning of the victim." *Id.* Those services "include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies," along with "nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services." *Id.* As McCormick testified, he derived the "products, services, and

9

accommodation" language in the Release from the "allowable expense" definition. (Tr. at 14.)

The question then becomes whether the items Dambacher seeks reimbursement for are "products, services, and accommodations" compensable as "allowable expenses" under the No-Fault Act. It is beyond dispute that nursing care — even twenty-four-hour in-home care — is an "allowable expense" under the Act. *See Drake v. Pa. Nat'l Mut. Ins. Co.*, 601 A.2d. 797, 800-01 (Pa. 1992); *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1159 (3d Cir. 1995).

Under the provisions of the No-Fault Act, an insurer's liability for medical and rehabilitation expenses is unlimited. *See* 40 Pa. Cons. Stat. §§ 1009.103 and 1009.202; *Ochs v. Erie Ins. Exch.*, 568 A.2d 971, 973 (Pa. Super. Ct. 1990). In sum, the "continuing duty" described in Paragraph Two seemingly subjects OneBeacon to unlimited liability for paying Dambacher's nursing expenses under the No-Fault Act, lying in contrast to the multiple references in the Release to "$4,000 per month," which might appear to limit its obligations to *exactly* $4,000 per month. Alternatively, reference to the unlimited liability provision of the No-Fault Act makes "at least $4,000" another consistent interpretation with respect to nursing services.

The relevant No-Fault Act provisions also fail to resolve ambiguity in the Release regarding van modifications and home renovations. With regard to those items, the language in Paragraph One and the "continuing duty" language in Paragraph Two both reference the No-Fault Act. Paragraph One states that Dambacher releases Commercial Union from paying "basic loss benefits" under the No-Fault Act to cover "past and future claims" for van modifications and home renovations, while, again, Paragraph Two refers to Commercial Union's continuing obligation to pay for certain "allowable expenses." Under the No-Fault Act, there are four components of "basic loss benefits":

(1) "allowable expense"; (2) "work loss"; (3) "replacement services loss"; and (4) "survivor's loss." 40 Pa. Cons. Stat. § 1009.103. Neither party contends that work loss, replacement services loss, or survivor's loss benefits are at issue. *Id.* Therefore, for purposes of the Release, the "basic loss benefits" that Commercial Union/OneBeacon argues it need not pay based on Paragraph One are indistinguishable from the "allowable expense" benefits that it seems obligated to provide as stated in Paragraph Two. Therefore, whether or not van modifications and home renovations are compensable as allowable expenses or basic loss benefits under the No-Fault Act, Paragraph One and Paragraph Two still stand in conflict and the Release remains ambiguous.

## B.    Term Construction

Having determined that the Release is ambiguous, the Court must construe its terms, and may consider extrinsic evidence in doing so. *Yocca,* 854 A.2d 425 at 438. Here, the extrinsic evidence falls into two categories: (1) the parties' 1986 settlement negotiations, and (2) the parties' post-Release conduct.

Based on the documentary and testimonial evidence, the Court concludes that OneBeacon must pay Dambacher's reasonable expenses for nursing services, van modifications, and home renovations, including for nursing services in excess of $4,000 per month. The April 10, 1986 letter from Whitton to Pelagatti closely tracks the language of the Release, but also states that the settlement includes "all prior and future claims, *except for nursing services*." (Whitton Letter) (emphasis added). This indicates that Dambacher intended to preserve *all* claims for nursing services. Pelagatti testified that the letter's "past and future" language did not reflect the settlement terms, and that he has a "vague recollection" he called Whitton about the error. (Tr. at 67.) The

11

parties also dispute the meaning of Paragraph 23 of the settlement petition Pelagatti filed during the state court litigation. OneBeacon argues that Dambacher released it from claims for *all* van modifications and home renovations. Dambacher contends that the word "past" in Paragraph 23 modifies only "nursing services." (Tr. at 76-77.) Given that over two decades have past since the settlement negotiations occurred, it is no surprise that the attorneys involved give widely divergent testimony regarding their clients' intent. But the Court must construe the Release against OneBeacon as the drafter of the contract. *Pittsburgh Bldg. Co.*, 920 A.2d. at 989. Therefore, the Court holds that Dambacher only waived her past claims.

The parties' post-Release conduct supports this holding. Under Pennsylvania law, the parties' "course of performance is always relevant in interpreting a writing." *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 741 n.6 (Pa. 1978). The uncontroverted evidence demonstrated that for over twenty years, Commercial Union and/or OneBeacon has paid for all of Dambacher's nursing services and van modifications, including for nursing services in excess of $4,000 per month. With regard to home modifications, Commercial Union and/or OneBeacon paid multiple bills over the years without question. OneBeacon only balked at paying for home modifications when they recently received a claim for over $400,000. The testimony of Ms. Rosenfelt was the only evidence Commercial Union offered concerning the parties' post-Release relationship, but it was unhelpful as she was only able to explain the parties' very recent history. (Tr. at 87-89.) OneBeacon's counsel's representations at trial that Dambacher's bills were paid mistakenly cannot be squared with Commercial Union/OneBeacon's consistent conduct of paying Dambacher's expenses, including nursing services exceeding $4,000 per month. Commercial Union/OneBeacon's history of paying Dambacher's claims speaks for itself. The Court finds that this course of conduct indicates the

parties intended to allow Dambacher to make future claims for expenses for nursing services, including those in excess of $4,000 per month, and for reasonable expenses for van modifications and home renovations. However, in accordance with the No-Fault Act and the Release, all of those expenses must be reasonable. Thus the Court finds that the Release does not bar Dambacher's claims for nursing services, van modifications, and home renovations on this basis as well.

### III. CONCLUSION

Accordingly, the Court will enter judgment in favor of Defendant and holds that OneBeacon must pay for Dambacher's reasonable expenses for nursing services, van modifications, and home renovations, including for nursing services in excess of $4,000 per month.[2] An appropriate Order will be docketed separately.

---

[2] Dambacher's Answer to the Complaint included a counterclaim for a declaratory judgment to the effect that OneBeacon is obligated to pay her various expenses, and a counterclaim for insurance bad faith under 42 Pa. Cons. Stat. § 8371. In accordance with the parties' stipulation, the Court now only considers the rights of the parties under the Release. At trial, the parties agreed that in the event the Court found for Dambacher under the Release, they would attempt to resolve later between themselves: (1) the costs of future nursing care, van modifications, and home modifications; and (2) the specific medical necessity for these items. (Tr. at 3.)