# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONE BEACON INSURANCE CO., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOANN DAMBACHER, | : | No. 09-5106 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                   **March 2, 2011**

Plaintiff OneBeacon Insurance Company ("OneBeacon") brought an action against its insured, Defendant Joann Dambacher, for a declaratory judgment that it has no obligation to pay certain claims submitted under an automobile insurance policy.   Following a bench trial on September 9, 2010, the Court ruled that under the terms of a release agreement, OneBeacon was required to provide for Dambacher's  reasonable expenses for nursing services, van modifications, and home renovations.  The Court conducted a hearing on January 31, 2011 concerning the amount of Dambacher's entitlement to home modifications.   For the reasons that follow, and pursuant to Federal Rule of Civil Procedure 52, the Court concludes that Dambacher is entitled to reimbursement from OneBeacon in the amount of $244,715.50.

## I.      FINDINGS OF FACT

### A.      Background

On November 3, 1977, Joann Dambacher was involved in an automobile accident that rendered her a quadriplegic. She has since required extensive nursing and rehabilitative care and disabled-accessible living accommodations.  (Trial Tr. at 31, 32, 51, 53.)   At the time of  her

accident, Dambacher was covered by an automobile insurance policy issued by Commercial Union Insurance Company ("Commercial Union"). (Agreed Facts ¶ 2.) After protracted litigation with Commercial Union over her entitlement to coverage, the parties settled the case in 1986 and executed a release. (Agreed Facts ¶¶ 2-6.) In November of 2009, OneBeacon, successor-in-interest to Commercial Union, filed an action for a declaratory judgment that it had no obligation to pay certain claims. The Court disagreed and ordered OneBeacon to provide for Dambacher's reasonable expenses for nursing services, van modifications, and home renovations.

However, the parties could not agree on a reasonable figure for home renovations. Therefore, this Court heard additional evidence to determine a reasonable amount for OneBeacon to pay to meet its obligations. The only issue currently before the Court is what constitutes reasonable design modifications to the new residence that Dambacher seeks to build and that OneBeacon must pay for under the release and the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa. Cons. Stat. § 1009.101 et seq. ("the No Fault Act").

B.     Dambacher's Evidence

Dambacher has engaged Craig Masterson of Holliday Architects ("Holliday") to design her new disabled-accessible residence in Shamong, New Jersey. She has submitted Masterson's testimony, Holliday's plans for her proposed residence, Masterson's cost breakdown for accessibility improvements, and a list of construction bids from five different contractors. Masterson, an architect for eight years, has designed six houses specifically built to accommodate disabled persons. He has also participated in the design of multi-family and commercial properties that are disabled-accessible.

Masterson has designed a one-story 3,605 square foot house for Dambacher. (Def.'s Ex. 1

[Holliday Plans].) The plans also include a garage measuring 932 square feet. (*Id.*) Masterson

itemized the improvements to the house that are attributable to making it functional for Dambacher.

(Def.'s Ex. 3 [Masterson Cost Breakdown].) Masterson testified that his proposed design

modifications were based on American National Standards Institute ("ANSI") and the Americans

With Disabilities Act ("ADA") guidelines. Dambacher's requested expenses total $491,574 and

are broken down as follows:

| Expense | Associated Cost |
|---|---|
| 1,200 extra square feet due to wheelchair access needs, including 505 square feet for a nurse's living suite | $273,880 |
| Wider interior doors for wheelchair access | $1,100 |
| "Lever type" door hardware for ease of use | $1,000 |
| Additional foundation required for a one-story house | $51,237 |
| Top-of-foundation wall detail, which lowers the house closer to grade, thereby reducing the height of required ramps | $700 |
| Automatic doors | $2,000 |
| Disabled-accessible automatic windows | $16,338 |
| Therapeutic spa | $33,551 |
| Hardwood and ceramic tile flooring required due to wheelchair requirements | $23,939 |
| Wall-mounted bathroom fixtures to conform with ADA and ANSI accessibility standards | $1,000 |
| Exterior wheelchair ramps | $2,203 |
| Oversize garage doors to accommodate disabled–accessible vehicles | $1,000 |
| Larger garage | $54,776 |
| Security system | $12,000 |
| Upgraded interior trim to accommodate wear from the impact of wheelchairs | $1,500 |
| Grab bars and associated blocking throughout the house to conform with ADA and ANSI specifications | $750 |
| Two ceiling-mounted lifts to accommodate Ms. Dambacher getting in and out of bed and in and out of the therapeutic spa | $14,600 |

(*Id.*)

Dambacher has submitted five estimates for the new home, ranging from $728,697.50 to $817,751.68. (Def.'s Ex. 2 [Letter Dated Nov. 15, 2010 from Masterson with Construction Bids].) For the 3,605 square foot home and the 932 square foot garage, this amounts to a cost of approximately $161 to $180 per square foot. (*See* Pl.'s Ex. 2 [Lynch Report] 4.) After OneBeacon argued at the hearing that some requested expenses were unreasonable, Dambacher agreed to subtract $134,690 from her proposal by eliminating several items, including the therapeutic spa, one of the two ceiling lifts, and higher-end flooring. This reduces the costs associated with making the home fully accessible to $356,894.00. (Def.'s Am. Prop. Findings of Fact and Concl. of Law ¶ 14.)

### C. OneBeacon's Evidence

OneBeacon has submitted the testimony, resume, and cost breakdown report of Christopher Lynch. Lynch is President of Alternatives to Barriers, Inc., which specializes in the "design of barrier-free environments." (Pl.'s Ex. 1 [Lynch Resume]) Alternatives to Barriers designs wheelchair-accessible environments for new and existing structures, taking into account clients' medical conditions and personal lifestyles. (*Id.*)

Lynch's report calls for a smaller, 2,300 square foot house. (Lynch Report 2.) Lynch testified that the accepted construction standard in the insurance industry in terms of materials and workmanship is "builders' grade." This refers to the costs associated with building an "average" house in a typical suburban neighborhood. (*See id.*) Lynch testified that in the area Dambacher wishes to build the home, builders' grade construction expenses amount to $150 per square foot for a home's living area and $75 per square foot for a garage. Lynch's report states that the cost per square foot Dambacher is seeking is excessive, observing that she seeks to build a "custom, luxury,

4

home." (*Id.* at 3.) He observes that Dambacher's plans include many cost-adding features that are not related to accessibility, including split log veneer siding, a large covered front porch, and a stone masonry chimney. (*Id.* at 5.) The Lynch report includes similar design modifications to Masterson's estimate, but the items total $199,598.01, rather than Dambacher's requested $356,894.00. (*Id.* at 13.)

## II.    CONCLUSIONS OF LAW

The parties agree that Pennsylvania law governs the legal issues in this case. Under Pennsylvania law, "[t]he enforcability of settlement agreements is determined according to the principles of contract law." *Century Inn, Inc. v. Century Inn Realty, Inc*., 516 A.2d 765, 767 (Pa. Super. Ct. 1986). In construing a contract's terms, a court "must strive to ascertain and give effect to the intent of the parties as found in the written contract." *Dep't of Transp. v. Pa. Indus. for the Blind and Handicapped,* 886 A.2d 706, 711 (Pa. Commw. Ct. 1994).

The Court previously noted that the following language in the release governs OneBeacon's obligations: "[OneBeacon] has a continuing duty to provide [Dambacher] with the costs of reasonable . . . medical services, products and accommodations as required by the Pennsylvania No-Fault Motor Vehicle Insurance Act . . . ." The Court stated that "medical services, products, and accommodations" included home modifications. Therefore, the Court must decide which home modifications are "reasonable" pursuant to the release and the No-Fault Act.

Under the No-Fault Act, reasonable costs of "medical services, products, and accommodations" are compensable as "allowable expense[s]," which OneBeacon must pay as the no-fault benefits obligor. *See* 40 Pa. Cons. Stat. § 1009.103. The No Fault Act's definition of

"medical and vocational rehabilitation services" is extremely broad, encompassing all "services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim." *Id.* Accordingly, Dambacher is entitled to reimbursement for a broad range of design modifications, but only those that are "necessary" in addition to being "reasonable."

### A.        The Size of the Home and Cost Per Square Foot

At the hearing, Masterson credibly testified that Dambacher's residence required significant extra square footage to allow her to maneuver and to accommodate her other needs, such as larger bathrooms. However, as Lynch observed in his testimony and in his report, the cost per square foot Dambacher has requested for the home's living space is excessive. (*See* Lynch Report 4.) Masterson's testimony did not refute Lynch's assertions that much of the increased cost per square foot is attributable to high-end features that have nothing to do with accessibility. Lynch's testimony and his report established that using "builders' grade" materials is the insurance industry standard for reimbursement purposes, and that $150 per square foot is a reasonable figure for the construction cost of interior living space in the Shamong area. (*See id.* at 6.)

Also, while Masterson's testimony established that a separate living area to accommodate Dambacher's in-home nursing care providers is a reasonable expense, 505 square feet is not necessary for this purpose. Although Masterson testified that some separate space — such as a bedroom — is necessary to enable in-home nurses to have some privacy within the house, he did not establish the necessity of a larger "nurse's suite" with an additional "sitting room." Lynch credibly testified that while an attending nurse should have some private area, such a large space is unnecessary. Therefore, the Court will subtract 132 square feet — the approximate size of the sitting room on the Holliday plans — from Dambacher's square footage allowance. (*See* Holliday Plans

A-2.)

Subtracting 132 square feet from the 1,200 square feet Dambacher has requested yields 1,068 square feet. At $150 per square foot, Dambacher is entitled to $160,200 in reimbursement for increased living space rather than her requested $273,880.

OneBeacon also argued that the size of the garage Dambacher has requested is excessive. The Court agrees. Dambacher has requested $54,776 for a larger garage to allow her to egress from her accessible van and for storage. Lynch credibly testified that $75 per square foot is the appropriate construction cost for a garage. Therefore, according to Masterson's estimate, Dambacher has requested an additional 730 square feet for a 932 square foot garage. The Court finds Lynch's testimony credible that only $14,725.50 is necessary to accommodate extra egress and storage space.

**B.     Other Items**

Dambacher requests $12,000 for a security system with cameras to protect her home. (Holliday Cost Breakdown 2). However, the Court agrees with Lynch's assessment that while a security system is a desirable item, it is not necessary under the law given that Dambacher receives twenty-four-hour nursing care at home. (*See* Lynch Report 16.)

Dambacher next requests $16,338 for automatic windows. Masterson testified that these windows are necessary so that Dambacher could open these windows herself when she prefers fresh air rather than the climate control provided by the home's HVAC system. However, Lynch's testimony established that because Dambacher will be receiving twenty-four-hour nursing care, windows could instead be opened by the attending nurse. (*See* Lynch Report 14.) Accordingly, this is not a necessary expense.

Dambacher has also conceded that hardwood floors, the therapeutic spa, and one of the

ceiling lifts are unnecessary expenses, thereby eliminating an additional $64,790. (Def.'s Am. Prop. Findings of Fact and Concl. of Law ¶ 14).

Deducting the total cost of these additional items eliminates $93,128 from the cost of the new home modifications.

Masterson's testimony and his cost breakdown report establish that the remaining expenses requested are reasonable and necessary. These expenses include additional costs for the home's foundation due to the fact that the house is one-story, and other items that are directly related to accommodate her disability, including ramps, wider doors, and special bathroom fixtures. (*See* Holliday Cost Breakdown.)

## C.      Final Reimbursement Breakdown

Deducting the expenses that are not reasonable and necessary, Dambacher is entitled to reimbursement in the amount of $244,715.50 for modifications to a newly constructed home, as follows:

| Expense | Associated Cost |
|---|---|
| 1,068 extra square feet due to wheelchair access needs, including a separate space for attending nurses | $160,200 |
| Wider interior doors for wheelchair access | $1,100 |
| "Lever type" door hardware for ease of use | $1,000 |
| Additional foundation required for a one-story house | $51,237 |
| Top-of-foundation wall detail, which lowers the house closer to grade, thereby reducing the height of required ramps | $700 |
| Automatic doors | $2,000 |
| Wall-mounted bathroom fixtures to conform with ADA and ANSI accessibility standards | $1,000 |
| Exterior wheelchair ramps | $2,203 |
| Oversize garage doors to accommodate disabled–accessible vehicles | $1,000 |
| Larger garage | $14,725.50 |

| | |
|---|---|
| Upgraded interior trim to accommodate wear from the impact of wheelchairs | $1,500 |
| Grab bars and associated blocking throughout the house to conform with ADA and ANSI specifications | $750 |
| One ceiling-mounted lift to accommodate Ms. Dambacher getting in and out of bed | $7,300 |
| **Total** | **$244,715.50** |

## III. CONCLUSION

Accordingly, the Court will enter judgment in favor of Dambacher in the amount of $244,715.50 for home modifications. An appropriate Order will be docketed separately.